IN RE ADOPTIONS OF BRUCE ET AL.

(No. 11087—Decided February 2, 1989.)

*Richard G. Denny*, for appellee Richard A. Jones, Jr.

*Jeri J. Simmons*, for appellant David L. Bruce.

WILSON, J. The petitioner-appellant, David L. Bruce, and Linda L. Jones were married in 1984. On July 6, 1987, Mr. Bruce filed petitions to adopt his wife's two children from a former marriage. The marriage of Linda Jones and the appellee, Richard A. Jones, Jr., had been dissolved in October 1983. The decree awarded custody of the two children to the mother, and the father was ordered to pay support in the amount of $55 per week.

In his petitions the appellant alleged that the appellee's consent to adopt is not required because Richard A. Jones, Jr. had failed without justifiable cause to communicate with the children and had failed to provide for the maintenance and support of the children as required by law or judicial decree for a period of at least one year preceding the filing of the petitions.

After objections to the petitions were filed, the consent issue was heard on January 6, 1988. At the conclusion of the hearing the trial judge announced that the adoption would require the appellee's consent.

Mr. Bruce has appealed from the order requiring the appellee's consent for the adoption to proceed. There are three assignments of error:

"The trial court erred as a matter of law in finding that Richard Jones' refusal to pay child support was justified.

"The trial court's finding that the appellant interfered with the natural father's right to communicate and visit with his children is not sustained by the manifest weight of the evidence.

"The trial court erred in the admission of evidence from the children's paternal grandmother."

We fail to see any prejudice in the admission of the paternal grandmother's testimony. The third assignment of error is overruled.

R.C. 3107.07(A) provides in part:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner[.]"

The trial court made findings of fact which in pertinent part provide:

"The father continued to pay support in a timely fashion until August of 1984, when the mother moved the children to California. On September 28, 1984, despite the urging of the Domestic Relations Judge in Indiana to the contrary, Mrs. Bruce refused to give her telephone number to Richard A. Jones, Jr. and refused to give her address to Mr. Jones. Shortly thereafter, Mr. Jones stopped making child support payments. Mr. Jones and his mother tried on numerous occasions through the efforts of the post office and telephone companies to locate Mrs. Bruce and the children. All attempts were unsuccessful. On at least two occasions packages were sent to the last known address for the children, but were returned. The Court finds that Richard A. Jones, Jr., after losing contact with his children, stopped paying child support, and further, that Mrs. Bruce after losing contact with Mr. Jones, had foregone any attempt to enforce the child support obligation."

In its conclusion of law the trial court found that "Linda Laura Bruce sufficiently interfered with Richard A. Jones' ability to communicate or visit with his children to such an extent that said failure is found to be a justifiable cause."

The findings by the court on this issue are supported by the evidence. We may not disturb the findings and order unless such determination is against the manifest weight of the evidence. *In re Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, 18 OBR 419, 481 N.E. 2d 613; *In re Adoption of Bovett* (1987), 33 Ohio St. 3d 102, 515 N.E. 2d 919. The second assignment of error is overruled.

It was undisputed that the appellee paid no support for at least a year immediately preceding the filing of the petitions. The appellee testified that his earnings for that year were approximately $18,000.

The trial court made no specific finding that the appellee had justifiable cause for his failure to pay support. However, by finding that appellee's consent was required the court by implication found that the appellee had justifiable cause for his failure to support.

"The question of whether a natural parent's failure to support his or her child has been proven * * * by clear and convincing evidence to have been without justifiable cause is a determination for the probate court, and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. (*In re Adoption of Masa* [1986], 23 Ohio St. 3d 163, 23 OBR 330, 492 N.E. 2d 140, paragraph two of the syllabus, followed.)" *In re Adoption of Bovett, supra,* at paragraph four of the syllabus.

*Masa* held that the natural father's

inability to pay was justifiable cause. *Masa* also pointed out "the factual difference between a parent who is unwilling but able to support and a parent who is willing to support but unable to do so." *Id.* at 166, 23 OBR at 332, 492 N.E. 2d at 143.

We have held that interference with visitation rights is not an excuse for the unilateral refusal to pay support. *In re Adoption of Webb* (Jan. 21, 1987), Montgomery App. No. 9960, unreported.

The first assignment of error is sustained.

We reverse and remand.

*Judgment accordingly.*

BROGAN, J., concurs.

FAIN, J., concurs separately.

FAIN, J., concurring. Although I concur in both the opinion and judgment of the court, because I have reluctantly concluded that the result is compelled by the present state of the law, I write separately to criticize that result.

The issue is whether a custodial parent's deliberate and significant interference with the non-custodial parent's ability to communicate with or to visit with his children is "justifiable cause" for the non-custodial parent's withholding of support, for the purpose of enabling him to resist the adoption of his children, with the consequent termination of all of his parental rights.

We held that such interference was not "justifiable cause" for this purpose in *In re Adoption of Webb* (Jan. 21, 1987), Montgomery App. No. 9960, unreported, an opinion that preceded my tenure on this court.

As this court noted in *Webb, supra,* the custodial parent's failure to permit visitation is not regarded as justifica-

tion for the non-custodial parent's withholding of child support for purposes of enforcing the payment of child support. *Flynn* v. *Flynn* (1984), 15 Ohio App. 3d 34, 15 OBR 57, 471 N.E. 2d 388. Although the custodial parent's failure to permit visitation has been regarded as a possible basis for a court-ordered reduction or cessation of child support, see *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123, 54 O.O. 2d 260, 267 N.E. 2d 299, the non-custodial parent's resort to self-help in that situation has traditionally been regarded as unjustified for purposes of enforcement of child support.

Given both this legal background and the adoption statute's use of the phrase "without justifiable cause" in R.C. 3107.07(A), I am not prepared to vote to overrule *Webb, supra.* I reluctantly conclude that under the current state of the law, a non-custodial parent's failure to pay support for one year is sufficient to permit his child to be adopted from him, without his consent, even though his failure to pay child support was in reaction to the custodial parent's determined and significant efforts to thwart his relationship with his child, through visitation or communication, as found in this case.

My background and experience lead me to be critical of that result, however. A significant part of my legal practice before joining the court was in domestic relations. In my experience, domestic relations judges and referees were almost uniformly unwilling or unable to take the measures actually necessary to enforce visitation when confronted by a determined custodial parent. In such a situation, the non-custodial parent could be expected to expend tens of thousands of dollars in legal fees and expenses without achieving any progress in enforcing visitation. Given this reality, it is understandable that many non-custodial

parents choose to resort to self-help in an effort to secure, ultimately, some relationship with their children beyond that of being simply an invisible source of funds.

Although I agree with those decisions that hold that a non-custodial parent's determined efforts to thwart any contact with the children should not constitute an excuse for purposes of enforcing child support, I do not agree that the non-custodial parent's rights should be subject to being permanently and completely severed, through adoption, just because he has resorted to self-help in the face of the sort of determined effort to cut him off from his child that was found by the trial court in this case. It is a fine thing to contemplate, as this court did in *Webb, supra,* the judicial remedies theoretically available to the non-custodial parent in such situations, but we live in the real world, and the practical reality is that pursuing those judicial remedies is usually about as useful as chasing the proverbial will-o'-the-wisp, and considerably more expensive.

Given the current state of the law, as exemplified by *Webb, supra,* I must agree with this court's interpretation of "without justifiable cause," as used in R.C. 3107.07(A). In my view, the result of that interpretation is unjustly harsh to those non-custodial parents who withhold the payment of child support in the face of the custodial parent's remorseless refusal to permit any contact with the non-custodial parent. The Ohio General Assembly is in a position to ameliorate that unjustly harsh result, through the amendment of R.C. 3107.07, and I hope that the General Assembly will consider amending the statute.