OPINION
Plaintiff-appellee, Amanda Viox (fka Amanda Metcalfe), and defendant-appellant, M. Pierce Metcalfe, were divorced in 1993. A shared parenting agreement filed the same year granted custody of the parties' three minor children to appellant during the school year and to appellee during the summer months, and waived all rights to child support from either party.
In a report filed on February 3, 1995 and after hearing various motions filed by both parties, a magistrate terminated the shared parenting agreement, awarded custody of the children to appellee, and ordered appellant to pay $331.17 per month in child support. The order was to be effective February 6, 1995. On February 3, 1995, the Clermont County Court of Common Pleas, Domestic Relations Division, approved the report and entered judgment. Appellant then appealed that decision as regarding custody, but failed to appeal the child support order.
On July 31, 1995, while his appeal was still pending, appellant filed a "Motion for Temporary Orders" in this court, requesting a stay of the trial court's February 3, 1995 entry granting custody of the children to appellee. Specifically, appellant prayed that this court issue an order "directing that the minor children remain in the custody of appellant pending conclusion of the appeal herein * * *." Appellant did not request a stay of the trial court's child support order.
In an affidavit supporting his motion for stay, appellant stated that even though appellee was entitled to have custody of the parties' children effective February 6, 1995, appellee had continued visitation and made no attempt to obtain custody of the children until July 30, 1995, during which time the children remained with appellant. Appellant further stated that on July 30, 1995, appellee took custody of the oldest child. By entry filed September 1, 1995, this court granted the stay for the duration of the appeal.
On January 29, 1996, this court affirmed the trial court's February 3, 1995 custody award of the children to appellee. Sometime thereafter, appellee took custody of all three children.
In April 1996, appellee, the Clermont County Child Support Enforcement Agency ("CSEA"), entered the trial court proceedings, attempting to collect from appellant an arrearage for child support in the sum of $4,555.52 predicated on the trial court's February 3, 1995 order. The parties were again before a magistrate on various motions on May 8, 1996. That same day, the magistrate filed a decision which stated that the parties had agreed to a shared parenting agreement effective June 1, 1996 whereby the oldest child would reside with appellee, and the other two children would reside with appellant. The parties also agreed to waive any right to child support. The shared parenting agreement did not address the child support arrearage that had accrued up to that point. A shared parenting decree was filed on August 22, 1996.
The issues between the parties seemed to have been temporarily resolved; however, CSEA, having failed to collect the alleged child support arrearage, moved to hold appellant in contempt. CSEA claimed arrearage accumulated from February 6, 1995 to August 22, 1996.
On January 21, 1997, appellant moved to modify or vacate the child support arrearage, claiming that all or part of the arrearage accrued while the children were in his physical custody and care. It was appellant's contention that during the period from January 1995 to January 29, 1996, he had actual physical custody of all the children except for a short period when the oldest child was with appellee. Although there was conflicting testimony as to the exact period of custody exercised by appellant, there was no dispute that appellant provided for the children for a substantial period. The trial court made no finding on this factual issue.
This matter is further confused by the fact that at some time during the period in question, appellee was in receipt of aid for dependent children. This court, however, considers that fact irrelevant to the issues to be decided in this cause.
Appellant's motion to modify or vacate the child support arrearage was heard by a magistrate who rendered a decision on February 24, 1997, denying the motion as follows:
 This matter came before the Court on February 21, 1997, on Defendant's Motion to Modify or Vacate Child Support Arrearage, filed January 21, 1997. Both parties were present[.] * * *
 Defendant testified the children resided with him while this matter was pending in the Court of Appeals from February 1995 to January 1996. On January 29, 1996, the Court of Appeals issued a decision affirming the trial court's decision, which had the effect of ordering child support, effective February 1995. Defendant now requests this Court modify [sic] the arrearage for the time the children actually resided with him.
 The parties entered into an agreement for shared parenting at a hearing on May 4, 1996. The agreement is set forth in the Magistrate's Decision journalized May 8, 1996, which indicates the Shared Parenting Plan was effective June 1, 1996. The formal Shared Parenting Plan was effective June 1, 1996. The formal Shared Parenting Plan was journalized August 22, 1996. There is no mention in the Magistrate's Decision or the Shared Parenting Plan of any reduction in the child support arrearage.
 ORC Sec. 3113.21(M) provides child support cannot be modified retroactively without a pending motion to modify child support. There is no motion pending to modify the child support. The appropriate time to deal with the question of the arrearage was in May 1996. The Court cannot now modify the amount of the arrearage.
After objection, the decision was approved by the trial court and filed for record on February 27, 1997. This appeal followed and appellant sets forth the following three assignments of error for review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY RETROACTIVELY ENFORCING A CHILD SUPPORT ORDER DESPITE THIS COURT'S STAY THEREOF.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY APPLYING R.C. 3113.21-(M)(3) TO APPELLANT.
Assignment of Error No. 3:
 AS A MATTER OF PUBLIC POLICY, R.C. 3113.21-(M)(3) SHOULD NOT APPLY TO A CHILD SUPPORT ARREARAGE THAT ACCRUES WHILE THE OBLIGOR HAS ACTUAL PHYSICAL CUSTODY OF THE CHILDREN.
For purposes of this opinion, appellant's second and third assignments of error will be consolidated and addressed together, as both assignments of error deal with the issue of the application of R.C. 3113.21(M)(3).
In his first assignment of error, appellant argues that during the period of time the stay order granted by this court was in effect, appellant was not required to make child support payments. Appellant argues that the motion for a stay of custody necessarily required a stay of the child support order since this court was aware of appellant's actual physical custody and support of the children. It is further argued that this court would not have intended for the support order to be retroactively enforced after the trial court's order was affirmed.
However, the question of child support was not before this court on appellant's request for a stay. The record clearly shows that appellant's motion to stay the trial court's February 3, 1995 order was solely directed to the issue of child custody. In turn, the stay granted by this court pending the initial appeal simply ordered:
 The order of the Clermont County Court of Common Pleas, Domestic Relations Division, granting custody to appellee is STAYED * * * until this appeal is concluded.
The foregoing language clearly shows that our stay did not modify the trial court's order determining custody and/or child support. It is well-established that a stay of proceedings does not relieve a party of the need to comply with orders of the trial court not affected by the stay. Ledger v. Ohio Dept. of Rehab. Corr. (1992), 80 Ohio App.3d 435, 441.
In the case at bar, once this court's January 29, 1996 decision upheld the trial court's February 3, 1996 order granting custody of the children to appellee and ordering appellant to pay child support, that order became enforceable. Having not found any authority, and appellant having cited none, for the proposition that the stay of a child custody order implicitly affects an existing child support order, we find that the trial court did not err in enforcing its child support order. Appellant's first assignment of error is overruled.
In his second and third assignments of error, appellant argues that it was error for the trial court to apply R.C. 3113.21(M)(3) to him when it denied his motion to modify or vacate child support arrearage. It is appellant's contention that R.C.3113.21(M)(3) as applied in this case is improper, could not have been intended by the legislature to apply to a situation where a child support arrearage accrues while the obligor has actual custody of the children, and is against public policy.
By enacting legislation such as R.C. 3113.21, the legislature has engaged in an admirable effort to cause more child support payments to be made. However, and not unexpectedly, circumstances may arise which cry out for exceptions.
R.C. 3113.21(M)(3) states that "[e]xcept as provided in division (M)(4) of this section, a court may not retroactively modify an obligor's duty to pay a delinquent support payment." The only extent to which child support payments can be retroactively modified is set forth in R.C. 3113.21(M)(4) which states as follows:
 A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.
Nevertheless, despite the language in R.C. 3113.21(M)(3) and (4), several Ohio courts have found additional exceptions justifying retroactive modification of child support payments as follows.
In Ollangg v. Ollangg (1979), 64 Ohio App.2d 17, an order was entered by agreement of the parties changing custody of the minor children from the plaintiff to the defendant. However, this order was never executed by transfer of physical custody and the children remained with the plaintiff, who subsequently filed a motion in contempt against the defendant for failing to make child support payments, and for an order reducing the arrearage to judgment. The trial court entered a judgment for child support arrearage.
The Tenth Appellate District, in reversing and remanding the trial court's decision, noted that "[a]lthough no mention was made of child support, necessarily, had [the] order [changing custody of the children from plaintiff to defendant] been carried into execution, the obligation of defendant to pay plaintiff for child support * * * would at least be mitigated to the extent that defendant was in fact providing such support in kind." Id. at 19-20. Thereafter, the court held that where there is a change of custody ordered, but such change never takes place, the trial court has jurisdiction to in effect nullify or modify the child support order. Id. at 20-21.
In Flynn v. Flynn (1984), 15 Ohio App.3d 34, an entry signed by both parties granted temporary custody of the parties' minor child to the appellant. No mention of child support was made in the entry and no support payments were made while the child was in the custody of the appellant. After the appellee regained custody of the child, the appellant made only two child support payments. The appellee thereafter filed a motion for an order reducing child support arrearage to judgment. The trial court granted the motion.
On appeal, this court noted that the initial issue to be decided was "whether the agreed entry between the parties which granted temporary custody to appellant terminated the provision of the original separation agreement requiring appellant to pay child support when the entry changing custody is silent on the matter." Id. at 36. This court then held that
 In the case at bar, appellant did in fact obtain custody of his son in accordance with the entry changing custody which both parties consented to. Thus, even though the entry never addressed the question of child support payments, appellant was not obligated to make such payments to his former wife, the noncustodial parent, while he had custody of their child, since appellant was in fact directly supporting the child during such time. Nevertheless, once appellee regained physical custody of the child, appellant was responsible to make the necessary support payments * * *.
Id.
Finally, in Osborne v. Osborne (1992), 81 Ohio App.3d 666, the Fourth Appellate District held that fraud was a basis to permit retroactive modification of child support. Id. at 674. The court held that evidence that the husband had committed fraud in misrepresenting the amount of his annual income for purposes of child support calculation justified retroactive modification of child support effective from the date of the dissolution decree, rather than the filing date of the wife's motion to increase. Id. The court stated that to hold otherwise would allow the husband to retain the benefits of the fraud he had perpetrated upon his wife and the court, which anomalous result would not be sanctioned. Id.
We are mindful that against the foregoing cases is the Supreme Court of Ohio's decision in Strack v. Pelton (1994), 70 Ohio St.3d 172, which held as follows:
 In Knapp v. Knapp (1986), 24 Ohio St.3d 141, 144-145 * * *, this court declared, "[f]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values." Finality is particularly compelling in a case involving determinations of parentage, visitation and support of a minor child.
Id. at 175.
In the case at bar, the record unequivocally shows that effective February 6, 1995, appellee was awarded custody of the parties' children and appellant was ordered to pay child support. Yet, the parties' three children remained in appellant's physical custody and under his care until July 30, 1995, at which time appellee obtained physical custody of the oldest child. Sometime after this court's January 29, 1996 decision, appellee obtained physical custody of all three children. It is undisputed that appellant never paid child support.
The record also shows that appellant was procedurally neglectful in his failure to raise the issue of his child support obligation sooner,[1] a fact possibly explained or excused by the difficulty he encountered in obtaining or retaining counsel. However, such neglect should not deny his right to fair and equitable relief.
At issue is the matter of appellant's child support obligation for the period from February 6, 1995 to January 29, 1996 during which period appellant claims he was the actual physical custodian of the children. If upheld, the trial court's February 27, 1997 ruling would require appellant to pay child support to the custodial parent of record, appellee, even though appellant had actual physical custody of the children and was directly fulfilling their needs. Appellant's claim, however, directly contradicts his own affidavits filed with several of his motions, which consistently state that he had physical custody of all three children from February 6, 1995 to July 30, 1995, at which time appellee obtained physical custody of the oldest child. During a hearing on appellant's motion to modify child support arrearage held on February 21, 1997, appellee testified that until January 29, 1996, the children were "back and forth" as they had been for five years.
As already noted, the trial court made no finding on this factual issue. Because of the several contradictions heretofore mentioned, we find that this factual issue cannot be resolved by reviewing the pleadings and that resolution requires an evidentiary hearing.[2]
While "courts have typically placed finality over perfection," Strack, 70 Ohio St.3d at 175, we find that in the case at bar justice should prevail over procedure, and perfection over finality. Appellant's second and third assignments of error are well-taken and sustained and the trial court's February 24, 1997 decision denying appellant's motion to modify or vacate child support arrearage is reversed. This cause is remanded to the trial court with instructions to conduct an evidentiary hearing to determine which of the parties had actual physical custody of the children from February 6, 1995 to June 1, 1996,[3] and to establish the amount of child support arrearage, if any, owed by appellant to appellee during the foregoing period.
POWELL, P.J., and WALSH, J., concur.
[1] Appellant's procedural neglect is evidenced by his failure to raise the issue of his child support obligation on appeal of the trial court's February 3, 1995 order or in his motion for a stay before this court. The record shows that when he filed his motion for a stay, appellant had had physical custody of all three children for six months. Thus, appellant could have filed a motion to vacate or modify child support then, rather than one and one-half years later by filing a motion to modify child support arrearage.
[2] We further find that Civ.R. 60(B) is the preferable method of obtaining the relief sought in this case by appellant. No Civ.R. 60(B) motion for relief from judgment was filed by appellant in this case; appellant filed a motion to modify or vacate child support arrearage. However, the "unusual circumstances of this case call for relief under the court's inherent power over its own judgment." In re Marriage of Watson (1983), 13 Ohio App.3d 344,346.
[3] In a decision filed May 8, 1996, the magistrate stated that the parties had agreed to a shared parenting plan effective June 1, 1996, whereby appellee would have custody of the oldest child, appellant would have custody of the other two children, and any right to child support would be waived.